UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

WICKAPOGUE 1 LLC, NICOLE
GALLAGHER, and MARK GALLAGHER,

        Plaintiff,

v.

BLUE CASTLE (CAYMAN) LTD.,

        Defendant.

**MEMORANDUM & ORDER**
23-CV-00561 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

Plaintiffs Wickapogue 1 LLC ("Wickapogue"), Nicole Gallagher and Mark Gallagher moved, under Federal Rule of Civil Procedure 65(a) and New York's Uniform Commercial Code ("UCC") § 9-625(a), for a preliminary injunction and a stay of all proceedings to prevent Defendant Blue Castle (Cayman) Ltd. ("Blue Castle" or "Lender") from selling Nicole Gallagher's membership interest in Wickapogue at a UCC Sale ("Motion").[1]  ECF No. 1-4.  For the reasons set forth below, the Motion is denied.

## BACKGROUND

Pursuant to Federal Rule of Civil Procedure 52(a)(2), the Court makes the following findings of fact to support its denial of a preliminary injunction.  On February 7, 2020, Wickapogue ("Borrower") borrowed a total of $5,750,000.00 from the original lender (the "Loan") for the purposes of purchasing real property in Southampton, New York (the "Property").  *See* ECF No. 7-2 (Mortgage Note for Land Loan); ECF No. 7-3 (Mortgage Note for

---

[1] Plaintiffs' action was initially filed in Suffolk County Supreme Court, and the Motion was sought pursuant to CPLR §§ 6301 and 2201.  ECF No. 1-2.

Building Loan).[2]  In connection with the Loan, Nicole Gallagher, owner of 100% of the membership interest in Wickapogue, signed a Pledge and Security Agreement pledging her interests in Wickapogue as security for the payment of the Loan ("Collateral").  ECF No. 1-5 (Pledge and Security Agreement).  At the same time, Nicole Gallagher also executed an affidavit on behalf of the Borrower, representing that the Borrower "intends to use the Loan proceeds for business purposes."  ECF No. 7-9 ¶ 5 (Affidavit Concerning Business Purpose and Non-Owner Occupancy).

The Loan was originally set to mature on March 1, 2021, but was extended to October 1, 2021, at the request of the Borrower, Nicole Gallagher and Mark Gallagher (the "Guarantors") (together, "Plaintiffs").  ECF No. 7-11 (Loan Modification Agreement).  On October 1, 2021, the extended loan maturity date, the Borrower defaulted.  By notice dated February 28, 2022, the Borrower and Guarantors were notified that:  (i) Borrower failed timely to pay all amounts due under the Loan; (ii) Borrower defaulted on the Loan and that certain judgments had been rendered against it; and (iii) the original lender "will exercise all remedies available . . . at law and/or in equity."  ECF No. 7-12 (Notice of Maturity Default and Additional Defaults/Demand to Cure).  The original lender also made a written demand that the Borrower pay the full amount owed by March 7, 2022.  *Id.*

On June 10, 2022, following a series of assignments, the Loan was assigned to Defendant.  ECF No. 7-1 ¶¶ 24–30 (Ramer Declaration).  On September 12, 2022, Defendant commenced a foreclosure action in this District concerning the Property.  *See Blue Castle (Cayman) Ltd. v. Wickapogue 1 LLC, et al.*, No. 22-cv-5422 (E.D.N.Y.).  On November 10,

---

[2]   The Loan is comprised of a land loan in the principal amount of $3,250,000.00 and a building loan in the original principal amount of $2,500,000.00.  *See* ECF No. 7-2 (Mortgage Note for Land Loan); ECF No. 7-3 (Mortgage Note for Building Loan).

2

2022, Defendant served Borrower and Nicole Gallagher with a notice of sale indicating that the Collateral—Nicole Gallagher's membership interest in Wickapogue—was going to be sold at a public auction on January 12, 2023 (the "UCC Sale"). ECF No. 7-21 (Notification of Public Disposition of Collateral); ECF No. 7-22 (FedEx Proof of Delivery).

## PROCEDURAL HISTORY

On January 11, 2023, the day before the UCC Sale was to take place, Plaintiffs filed the instant action against Defendant in Suffolk County Supreme Court seeking, among other things, injunctive relief to prevent the UCC Sale. ECF No. 1-2 ¶¶ 62–64. Plaintiffs simultaneously moved for a temporary restraining order ("TRO") to prevent the UCC Sale from moving forward. ECF No. 1-4 ¶ 2. On the same day Plaintiff commenced the case, the Suffolk County Supreme Court granted the TRO and scheduled a preliminary injunction hearing for February 9, 2023. ECF No. 1-14. This matter was removed by Defendant to this Court on the basis of diversity jurisdiction on January 25, 2023. ECF No. 1. Defendant submitted its opposition to Plaintiffs' Motion on February 7, 2023. ECF No. 7. On February 9, 2023, the Court held a preliminary injunction hearing. *See* Minute Entry for Proceedings, dated February 9, 2023.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish, by clear and convincing evidence: "(1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of the injunction." *Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 25–26 (2d Cir.

3

2018).[3] "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Id.* at 26 (emphasis in original). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017); *see also Am. Civ. Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) ("A preliminary injunction is an equitable remedy and an act of discretion by the court.").

## DISCUSSION[4]

### I.    Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Home It, Inc. v. Wen*, No. 19-cv-7070, 2020 WL 353098, at *3 (E.D.N.Y. Jan. 21, 2020). To show irreparable harm, the moving party must establish that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.*

---

[3]    Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

[4]    During the preliminary injunction hearing, Plaintiffs raised a new argument claiming that because Plaintiff Wickapogue is an "unpublished" limited liability company, the contracts it entered are null and void. The Court will not consider arguments or evidence that were not raised or attached to Plaintiffs' moving papers. In any event, it appears that pursuant to Section 206 of New York's Limited Liability Company Law, the failure of a limited liability company to publish its articles of organization or a notice containing the substance thereof "shall not limit or impair the validity of any contract or act of such limited liability company, or any right or remedy of any other party under or by virtue of any contract." N.Y. Ltd. Liab. Co. Law § 206.

Plaintiffs argue that they will suffer irreparable harm because "if consummated, [the UCC Sale], will [] vitiate [Plaintiffs'] equitable right of redemption." ECF No. 1-4 ¶ 7. In support of that claim, they allege that Defendant, through a combination of various agreements comprising the Loan documents, has "clogged" the Plaintiffs' equitable right to pay off the Loan. ECF No. 1-4 ¶¶ 36–40. Defendant responds that: (i) because Plaintiffs' interest in the Property is commercial, Plaintiffs' loss does not amount to irreparable harm, and (ii) Plaintiffs have a statutory right to redeem under the UCC, and as a result their equitable right to redemption has not been clogged. ECF No. 7 at 11–15. Determining "[w]hether the loss of the Property can create irreparable injury is a fact-sensitive inquiry." *SK Greenwich LLC v. W-D Group (2006) LP*, No. 10-cv-7846, 2010 WL 4140445, at *3 (S.D.N.Y. Oct. 21, 2010). Facts that would counsel towards a finding of irreparable injury include whether the property possesses "uniquely valuable characteristics." *Medgar Evers Houses Assocs., L.P. v. Carro*, No. 01-cv-6107, 2001 WL 1456190, at *6 (E.D.N.Y. Nov. 6, 2001). Nevertheless, "[w]here a Plaintiff's interest in the real estate is commercial, and the harm it fears is the loss of its investment, as opposed to loss of its home or a unique piece of property in which it has an unquantifiable interest, such losses are ordinarily compensable by damages, and do not necessarily amount to an irreparable harm as a matter of law." *Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder, LLC*, No. 17-cv-1138, 2017 WL 729128, at *3 (S.D.N.Y. Feb. 23, 2017); *see also Shelbourne BRF LLC v. SR 677 Bway LLC*, 139 N.Y.S.3d 799, 800 (N.Y. App. Div. 2021) ("[T]he feared loss of an investment can be compensated in money damages.").

In light of the facts presented here, the Court finds that Plaintiffs have failed to demonstrate irreparable harm. Although Plaintiffs describe the Property as the "dream home of the Gallagher family," ECF No. 1-2 ¶¶ 17, 23, the uncontroverted facts demonstrate that Plaintiff

5

Wickapogue's interest in the Property is commercial. On February 7, 2020, in connection with the Loan, Plaintiff Nicole Gallagher signed an affidavit on behalf of Wickapogue, swearing that: (i) "all of the proceeds of the Loan will be used for business and commercial purposes"; (ii) "[n]one of the Loan proceeds will be used for personal, family, or household purposes"; (iii) Wickapogue "intends to use the Loan proceeds for business purposes, including but not limited to the following: refinance of a fix and flip investment property"; (iv) the property is not Plaintiffs' residence; (v) Plaintiffs have "no intention of ever occupying or making the Property the[ir] residence"; and (vi) that Wickapogue has "at all times orally confirmed . . . that [it] is acquiring the Loan for business purposes only." ECF No. 7-9 ¶¶ 4–8 (Affidavit Concerning Business Purpose and Non-Owner Occupancy). The affidavit states that Defendant's predecessor was relying on the Borrower's representations for the purposes of offering and making the Loan. *Id.* ¶¶ 3–4 ("Borrower further acknowledges that Lender would not make the Loan if Borrower intended to use any Loan proceeds for personal, family, or household purposes. Borrower acknowledges that Lender is relying on this Affidavit in the making of the Loan."). The caselaw is clear: the fear of loss of an investment does not amount to an irreparable harm as a matter of law. *Atlas MF Mezzanine Borrower*, 2017 WL 729128, at *3. The loss of Plaintiffs' real estate investment is compensable by money damages.

Moreover, the Court does not find Plaintiffs' argument regarding the clogging of their equitable right of redemption to be persuasive. Pursuant to UCC § 9-623, Plaintiffs have a statutory right of redemption, which provides that they may redeem the Collateral (here, being Nicole Gallagher's membership interest in Wickapogue) by fulfilling all obligations secured by the Collateral prior to the Collateral's disposal. *See* UCC § 9-623; *see also HH Cincinnati Textile L.P. v. Acres Cap. Serv. LLC*, No. 652871/2018, 2018 WL 3056919, at *3–4 (N.Y. Sup.

6

Ct. June 20, 2018) (finding that plaintiffs' equitable right of redemption has not been clogged when they retain a right of redemption under UCC § 9-623). The Court also finds that because Plaintiffs are on notice of the UCC Sale, they can take part in that process and bid for the Collateral. This fact also counsels against a finding of irreparable harm. *See id.* Therefore, for the reasons set forth above, Plaintiffs have failed to demonstrate that they will be irreparably harmed absent a grant of their Motion.

## II.     Likelihood of Success on the Merits

Plaintiffs argue that they are likely to succeed in obtaining a declaratory judgment and permanent injunctive relief to prevent the UCC Sale because the sale is "not commercially reasonable" as required by UCC § 9-610(b). Plaintiffs contend that: (i) notice about the UCC Sale was allegedly not given to all affected parties; (ii) restrictions such as requiring bidders to register two days before the sale and to submit 10% of their maximum bid prior to the sale, are "tantamount to manipulation of a judicial auction"; and (iii) Plaintiffs have an opportunity to refinance the Property and pay Defendant back the money owed. ECF No. 1-4 ¶¶ 41–45.

A review of the record reveals that Defendant's sale of the Collateral is commercially reasonable as a matter of law. The January 12, 2023, UCC Sale date was set on November 8, 2022, and information about the sale was sent by Rosewood—the broker hired by Defendant for the purpose of marketing and conducting the UCC Sale—to 39,000 investors and over 9,700 bankruptcy and real estate attorneys.[5] ECF No. 7 at 19; ECF No. 7-13 ¶ 11 (Corbin Declaration); ECF No. 7-14 (Rosewood Marketing Report). Information about the sale was also published in newspapers including the New York Metro Edition of the Wall Street Journal,

---

[5]     Rosewood is a licensed real estate broker with substantial experience in the marketing and sale of real property. ECF No. 7-13 ¶ 4.

7

Newsday, the Real Estate Alert and Dan's Paper on various dates between November 11, 2022, and January 6, 2023. ECF Nos. 7-16, 7-17, 7-18, 7-19 (Newspaper Advertisements). Defendant further alleges that it notified Plaintiff Wickapogue of the sale of its collateral on November 10, 2022, more than 60 days before the UCC Sale was to occur. ECF No. 7-21 (Notification of Public Disposition of Collateral); ECF No. 7-22 (FedEx Proof of Delivery).[6] This is not only objectively reasonable, but also statutorily reasonable. *See* UCC § 9-612(b) ("[A] notification of disposition sent after default and 10 days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition."); *see also Orix Credit All., Inc. v. Blevins*, No. 90-cv-5759, 1993 WL 177940, at *2 (S.D.N.Y. May 17, 1993) (finding that a sale, advertised twice in a newspaper, which includes a notice describing the day, time, place, and collateral being sold, and for which the borrower received proper notice, was commercially reasonable as a matter of law); *DeRosa v. Chase Manhattan Mortg. Corp.*, 782 N.Y.S.2d 5, 10 (N.Y. App. Div. 2004) (finding that the totality of the record suggests that the UCC sale was conducted in a commercially reasonable manner).

Furthermore, the Court does not find requirements that bidders register two days before the sale date and submit 10% of their maximum bid prior to the UCC Sale to be commercially unreasonable. Such requirements incentivize bidders with legitimate interests to participate, and

---

[6] Plaintiffs dispute whether Defendant's service of the notice for the UCC Sale was sufficient because Mark Gallagher, the guarantor for the Loan, did not receive the notice. ECF No. 1-4 ¶¶ 15–16. The Court does not find this argument to be persuasive as Defendant has provided evidence that the notice was delivered to the Borrower whose Collateral was at stake. ECF No. 7-22 (FedEx Proof of Delivery). To the extent that failing to send a separate notice to Mark Gallagher was a violation of UCC § 9-611(c)(2), such a failure does not automatically entitle Plaintiffs to equitable relief because UCC § 9-625, which governs the remedies for violations of UCC Article 9, gives the Court the option to award either injunctive relief or damages. *See In re Enron Corp.*, No. 01-16034, 2005 WL 3873890, at *10 (Bankr. S.D.N.Y. June 16, 2005) (finding that secured party's alleged notice failures "d[id] not rise to the level that would warrant granting . . . equitable relief"). An injunction is not warranted where, as here, Mark Gallagher has had actual notice of the impending disposition of the Collateral.

can be used as a method to diligence the *bona fides* of potential bidders. Accordingly, the Court finds that Plaintiffs are unlikely to succeed on the merits of their claim for a declaratory judgment and permanent injunctive relief to prevent the UCC Sale from moving forward as "commercially unreasonable."

With respect to Plaintiffs' remaining claims for fraud and breach of the covenant of good faith and fair dealing, *see* ECF No. 1-2 ¶¶ 74–86, the Court finds that Plaintiffs have not provided sufficient evidence to suggest that Defendant has acted in bad faith or deprived Plaintiffs of "the benefits of which they are entitled under the Loan Agreements." ECF No. 1-1 ¶¶ 71–77.[7] Plaintiffs and Defendant's predecessor in interest entered into contractual agreements and Plaintiffs do not dispute that Borrower defaulted on the Loan. Defendant is exercising its right under the Pledge Agreement and Security Agreement to sell Borrower's Collateral as a result of that default. ECF No. 1-5 at 6 (Pledge and Security Agreement) ("At any time during the continuance of an Event of Default . . . [t]he Lender shall have the right . . . to sell or otherwise dispose of all or any part of the Collateral, at public or private sale . . . ."). Plaintiffs were on notice, as of February 28, 2022, that Defendant's predecessor (and as a result, Defendant) could "exercise all remedies available" under the Loan documents, including the Pledge and Security Agreement. ECF No. 7-12 at 4 (Notice of Maturity Default and Additional Defaults/Demand to Cure).

---

[7] Plaintiffs allege that Defendant's predecessor made certain assurances that the Loan would be extended through the completion of the refinance or sale of the Property, thus allegedly misleading Plaintiffs into investing additional money in the Property. ECF No. 1-1 ¶¶ 9–11, 40 (Complaint). However, Plaintiffs do not make those same representations about Defendant Blue Castle. Accordingly, since Plaintiffs do not allege any misconduct by Defendant, the Court finds no basis to restrain Defendant from exercising its rights under the Pledge and Security Agreement. *See* ECF No. 1-5 at 6 (Pledge and Security Agreement).

### III. Balance of Hardships

While the Court understands that Plaintiffs stand to lose their interest in the Property, which is valued at over $13 million,[8] and Defendant's loss is markedly less than that, the Court nevertheless finds that this factor does not militate in favor of granting a preliminary injunction. The harm to Plaintiffs "comes from business realities which do not present a fair ground for litigation, or for court intervention." *Atlas MF Mezzanine Borrower*, 2017 WL 729128, at *5. Accordingly, the Court finds that Plaintiffs have not demonstrated that any potential hardship should result in the issuance of a preliminary injunction. Any alleged hardship "would not overcome [Plaintiffs'] failure to prove the necessary elements of irreparable harm and the inadequacy of damages." *Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 343 (S.D.N.Y. 2020).

### IV. Public Interest

"The consideration of the public interest is designed to ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Hope Organics LLC v. Preggo Leggings LLC*, No. 21-cv-2416, 2021 WL 5919367, at *13 (S.D.N.Y. Dec. 15, 2021). Here, neither party addressed this issue in their motion papers. However, "[t]here is a well-recognized public interest in enforcing contracts and upholding the rule of law." *Empower Energies, Inc. v. SolarBlue, LLC*, No. 16-cv-3220, 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016). The Court finds that the denial of a preliminary injunction serves the public interest by holding the parties to their contractual obligations. Accordingly, the Court finds that the public interest factor weighs in favor of denial of a preliminary injunction.

---

[8] Plaintiffs contend that the Property has a value of $16 million. ECF No. 1-1 ¶ 8. However, the Property is on the market for $13,980,000.00. *See* "145 Wickapogue Rd, Southampton NY 11968," ZILLOW, https://www.zillow.com/homedetails/145-Wickapogue-Rd-Southampton-NY-11968/300223969_zpid/ (last visited February 17, 2023).

10

## **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion is DENIED.

SO ORDERED.

                                                               */s/ Hector Gonzalez*
                                                               HECTOR GONZALEZ
                                                               United States District Judge

Dated: Brooklyn, New York
         February 17, 2023